

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-19-1995

# Flamer v State of DE

Precedential or Non-Precedential:

Docket 93-9000

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Flamer v State of DE" (1995). *1995 Decisions.* Paper 274.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/274

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 93-9000
_____

WILLIAM H. FLAMER

v.

STATE OF DELAWARE; DARL CHAFFINCH;
RAYMOND CALLAWAY; HAROLD K. BRODE;
WILLIAM H. PORTER; GARY A. MYERS;
LOREN C. MEYERS; DANA REED; JAMES E.
LIGUORI; CHARLES M. OBERLY, III;
WALTER REDMAN; STANLEY W. TAYLOR,
Acting Warden; WARDEN ROBERT SNYDER

William Henry Flamer,
Appellant

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(D.C. Civil No. 87-00546)

Argued:  February 16, 1994
Before:  BECKER, HUTCHINSON* and ALITO, Circuit Judges
Reargued in Banc:  November 22, 1994
Before:  SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN,
GREENBERG, HUTCHINSON*, SCIRICA, COWEN, NYGAARD,
ALITO, ROTH, LEWIS, McKEE and SAROKIN, Circuit Judges


BAYARD, HANDELMAN & MURDOCH, P.A.
CHARLENE D. DAVIS, ESQ. (Argued)
902 Market Street, 13th Floor
P. O. Box 25130
Wilmington, DE  19899

JOSHUA L. SIMON, ESQ.
Law Office of David Staats
Concord Plaza Office Park
Rodney Building, Suite 100H
Wilmington, DE  19810

Counsel for Appellant, Flamer


1

*Judge Hutchinson participated in the argument and conference of the in banc court in these appeals, but he died before the filing of the opinion.

GARY A. MYERS, ESQ. (Argued)
PAUL R. WALLACE, ESQ.
CARL C. DANBERG, ESQ.
Deputy Attorney General
Department of Justice
State Office Building
820 N. French Street, Eighth Floor
Wilmington, DE  19801

Counsel for Appellees

———————————

No. 93-9002

———————————

BILLIE BAILEY,
Appellant

v.

ROBERT SNYDER, Warden,
Delaware Correctional Center

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(D.C. Civil No. 92-00209)

———————————

Argued:  April 26, 1994
Before:  MANSMANN, COWEN, and LEWIS, Circuit Judges
Reargued In Banc:  November 22, 1994
Before:  SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN,
GREENBERG, HUTCHINSON*, SCIRICA, COWEN, NYGAARD,
ALITO, ROTH, LEWIS, McKEE & SAROKIN, Circuit Judges

(Opinion Filed:  October 19, 1995)

———————————

EDMUND D. LYONS, JR., ESQ. (Argued)
DAVID JAY LYONS, ESQ.
805 Marine Midland Plaza
824 Market Street Mall
P. O. Box 579
Wilmington, DE 19899

3

Counsel for Appellant, Bailey
PAUL R. WALLACE, ESQ. (Argued)
Deputy Attorney General
Department of Justice
State Office Building
820 N. French Street, Eighth Floor
Wilmington, DE  19801

Counsel for Appellee, Snyder

---

OPINION OF THE COURT

---

ALITO, Circuit Judge:

This opinion of the in banc court concerns two appeals from orders of the United States District Court for the District of Delaware that denied habeas corpus petitions filed by two state prisoners, William Henry Flamer and Billie Bailey, who were separately tried for unrelated double homicides and sentenced to death.  The appeals were initially heard by two separate panels of this court during roughly the same period.  Both prisoners argued, among other things, that their death sentences should be vacated pursuant to Clemons v. Mississippi, 494 U.S. 738 (1990), because Delaware, in the parlance of the Supreme Court's Eighth Amendment decisions, is a "weighing state" and because the juries in both cases were instructed at the penalty phase regarding certain statutory aggravating factors that were either impermissibly vague or duplicative.  Before a panel opinion was filed in either appeal, the court voted to rehear these cases in

4

banc for the purpose of addressing the prisoners' related arguments.

Agreeing with the two district court judges who denied the prisoners' petitions and with the unanimous Supreme Court of Delaware, we now hold that Delaware is not a "weighing state," that Clemons is therefore inapplicable, and that the governing Supreme Court precedent is Zant v. Stephens, 462 U.S. 862 (1983). Applying Zant, we hold that the strikingly similar jury instructions and interrogatories used in these two cases did not violate the Eighth Amendment. We also find no merit in Bailey's remaining arguments. In this opinion, we do not address Flamer's many other arguments, but in a separate opinion that is being filed simultaneously with this opinion, the panel that originally heard Flamer's appeal rejects all of Flamer's other arguments. Accordingly, the district court orders in both cases will be affirmed.

I.

A. The background of Flamer's appeal is set out in the panel opinion that is being filed together with this opinion, and therefore a detailed statement is not needed here. Flamer was arrested in 1979 for murdering his elderly aunt and uncle during a robbery at their home. In early 1980, he was tried and convicted on four charges of first-degree murder: two charges of intentionally causing the death of another person, Del. Code Ann. tit. 11 § 636(a)(1), and two charges of felony murder, Del. Code Ann. tit. 11, § 636(a)(2). He was also found guilty of other

5

non-capital offenses.  After the jury returned these verdicts, the state sought the imposition of the death penalty.

At the time of Flamer's trial,[0] Del. Code Ann. tit. 11, § 4209(d)(1) provided in pertinent part as follows:

> A sentence of death shall not be imposed unless the jury or judge, where appropriate, finds:
>
> a.  Beyond a reasonable doubt at least 1 statutory aggravating circumstance; and
>
> b.  Unanimously recommends, after weighing all relevant evidence in aggravation or mitigation which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender, that a sentence of death be imposed.

See Flamer v. State, 490 A.2d 104, 146 (Del. 1983).  Nineteen statutory aggravating circumstances were listed in Del. Code Ann. tit. 11, § 4209(e)(1).[0]  In addition, the statute provided that a

---

[0]The language of this provision today is substantially the same:

> A sentence of death shall be imposed, after considering the recommendation of the jury, if a jury is impaneled, if the Court finds:
>
> a.  Beyond a reasonable doubt at least 1 statutory aggravating circumstance; and
>
> b.  By a preponderance of the evidence, after weighing all relevant evidence in aggravation or mitigation which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender, that the aggravating circumstances found by the Court to exist outweigh the mitigating circumstances found by the Court to exist.

Del. Code Ann. tit. 11, § 4209(d) (Supp. 1994).
[0]These were:

6

a.  The murder was committed by a person in, or who has escaped from, the custody of a law-enforcement officer or place of confinement.

b.  The murder was committed for the purpose of avoiding or preventing an arrest or for the purpose of effecting an escape from custody.

c.  The murder was committed against any law-enforcement officer, corrections employee or fireman, while such victim was engaged in the performance of his official duties.

d.  The murder was committed against a judicial officer, a former judicial officer, Attorney General, former Attorney General, Assistant or Deputy Attorney General or former Assistant or Deputy Attorney general, State Detective or former State Detective, Special Investigator or former Special Investigator, during, or because of, the exercise of his official duty.

e.  The murder was committed against a person who was held or otherwise detained as a shield or hostage.

f.  The murder was committed against a person who was held or detained by the defendant for ransom or reward.

g.  The murder was committed against a person who was a witness to a crime and who was killed for the purpose of preventing his appearance or testimony in any grand jury, criminal or civil proceeding involving such crime.

h.  The defendant paid or was paid by another person or had agreed to pay or be paid by another person or had conspired to pay or be paid by another person for the killing of the victim.

i.  The defendant was previously convicted of another murder or manslaughter or of a felony involving the use of, or threat of, force or violence upon another person.

j.  The murder was committed while the defendant was engaged in the commission of, or attempt to commit, or flight after committing or attempting to commit any degree of rape, arson, kidnapping, robbery, sodomy or burglary.

7

statutory aggravating circumstance would be deemed to have been established if a defendant was convicted under certain subsections of the Delaware first-degree murder statute, Del. Code Ann. tit. 11, § 636(a)(2)-(7).[0]  Thus, under these

---

k.   The defendant's course of conduct resulted in the deaths of 2 or more persons where the deaths are a probable consequence of the defendant's conduct.

l.   The murder was committed by means of torture, use of an explosive device or poison, or the defendant used such means on the victim prior to murdering him.

m.   The defendant caused or directed another to commit murder or committed murder as an agent or employee of another person.

n.    The murder was outrageously or wantonly vile, horrible or inhuman.

o.   The defendant was under a sentence of life imprisonment, whether for natural life or otherwise, at the time the commission of the murder.

p.   The murder was committed for pecuniary gain.

q.   The victim was pregnant.

r.   The victim was severely handicapped, severely disabled or elderly.

s.   The victim was defenseless.

[0]Del. Code Ann. tit. 11, § 636(a) provided:

(a)  A person is guilty of murder in the first degree when:

(1)  He intentionally causes the death of another person;

(2)  In the course of and in furtherance of the commission or attempted commission of a felony or immediate flight therefrom, he recklessly causes the death of another person;

8

provisions, a Delaware jury at the penalty phase of a capital case was required to perform two steps.  In the first step, which we will hereafter call the "eligibility" step, the jury was required to determine whether at least one statutory aggravating circumstance had been (or was deemed to have been) proven.  In the second step, which we will call the "selection" step, the jury was required to weigh <u>all</u> of the pertinent evidence in aggravation (not just the statutory aggravating circumstances) and all of the evidence in mitigation.

---

    (3) He intentionally causes another person to commit suicide by force or duress;

    (4) He recklessly causes the death of a law enforcement officer, corrections employee or fireman while such officer is in the lawful performance of his duties;

    (5) He causes the death of another person by the use of or detonation of any bomb or similar destructive device;

    (6) He, with criminal negligence, causes the death of another person in the course of and in furtherance of the commission or attempted commission of rape, kidnapping, arson in the first degree, robbery in the first degree, or immediate flight therefrom;

    (7) He causes the death of another person in order to avoid or prevent the lawful arrest of any person, or in the course of and in furtherance of the commission or attempted commission of escape in the second degree or escape after conviction

Thus, if a defendant was convicted of first-degree murder under subsection (1) -- for "intentionally causing the death of another person" -- no statutory aggravating circumstance would automatically be deemed to have been established.  However, if a defendant was convicted under subsections (2)-(7), a statutory aggravating circumstance would be deemed to have been proven.

9

In Flamer's case, a statutory aggravating circumstance was deemed to have been established by virtue of his convictions on two charges of felony murder (Del. Code Ann. tit. 11, §636(a)(2)). See supra pages 4-5. In addition, the prosecution argued that three other statutory aggravating circumstances had been proven, namely, (1) that Flamer's conduct had "resulted in the deaths of 2 or more persons where the deaths [were] a probable consequence of [that] conduct,"[ ] (2) that the murders were "outrageously or wantonly vile, horrible, or inhuman,"[ ] and (3) that the murders were committed "for pecuniary gain."[ ] The prosecution urged the jury to impose the death sentence based on these circumstances and certain non-statutory aggravating factors, including Flamer's prior criminal record, the age of his two victims, the frailty of his aunt, and Flamer's exploitation of his aunt and uncle's trust in order to gain entrance to their home. Flamer Joint Appendix ("JA") at 1485-86. The jury was given instructions that are discussed in detail in Part III of this opinion. The jury then returned a verdict recommending[ ] that a sentence of death be imposed. On a special interrogatory form, which is also discussed in detail in Part III, the jury found that all three of the additional statutory aggravating circumstances alleged by the prosecution had been established,

---

[ ]Del. Code Ann. tit. 11, § 4209(e)(1)k.
[ ]Del. Code Ann. tit. 11, § 4209(e)(1)n.
[ ]Del. Code Ann. tit. 11, § 4209(e)(1)p.
[ ]Although the Delaware statute described the jury's decision as a "recommendation," this decision, if supported by the evidence, was "binding on the Court." Del. Code Ann. tit. 11, §4209(d)(1)b.

10

and the jury indicated that it had relied on all of the statutory aggravating circumstances in making its recommendation.

Shortly after this verdict was returned, the United States Supreme Court handed down its decision in Godfrey v. Georgia, 446 U.S. 420 (1980), which concerned the Georgia sentencing scheme, upon which, according to the Supreme Court of Delaware, the Delaware scheme "was obviously fashioned." State v. White, 395 A.2d 1082, 1085 (Del. 1978). Under the Georgia scheme, like the Delaware scheme, the jury was first required to determine whether at least one statutory aggravating circumstance had been proven. See Zant v. Stephens, 462 U.S. at 871. If the jury found that such a circumstance had been shown, the jury was then called upon to consider all pertinent aggravating and mitigating evidence in determining whether a death sentence should be imposed. Id. at 871-72.

In Godfrey, the defendant had killed his wife and mother-in-law "instantly" by shooting them in the head with a shotgun. 446 U.S. at 425. In sentencing the defendant to death, the jury found one statutory aggravating factor to have been proven, i.e., that the murders were "outrageously or wantonly vile, horrible, or inhuman, in that [they] involved torture, depravity of mind, or an aggravated battery to the victim." Id. at 426. The jury found that this statutory aggravating factor had been proven even though the prosecution had not claimed that the murders had involved "torture" or an "aggravated battery" (other than the homicides themselves) and even though the jury's answers on a sentencing questionnaire indicated that neither

11

torture nor an aggravated battery (other than the murders) had been found.  Id.

The Georgia Supreme Court affirmed the death sentence, but the United States Supreme Court reversed.  In the plurality opinion that embodied the Court's holding,[0] Justice Stewart observed that a valid capital sentencing scheme "must channel the sentencer's discretion by `clear and objective standards' that provide `specific and detailed guidance,' and that `make rationally reviewable the process for imposing a sentence of death.'"  Id. at 428 (footnotes omitted).  The plurality concluded that the challenged statutory aggravating circumstance, as apparently interpreted by the Georgia Supreme Court in Godfrey, did not fulfill this requirement.  The plurality wrote:

> In the case before us, the Georgia
> Supreme Court has affirmed a sentence of
> death based upon no more than a finding that
> the offense was "outrageously or wantonly
> vile, horrible and inhuman."  There is
> nothing in these few words, standing alone,
> that implies any inherent restraint on the
> arbitrary and capricious infliction of the
> death sentence.  A person of ordinary
> sensibility could fairly characterize almost
> every murder as "outrageously or wantonly
> vile, horrible and inhuman."  Such a view
> may, in fact, have been one to which the
> members of the jury in this case subscribed.

---

[0] Justice Stewart's plurality opinion was joined by three other justices.  Justice Marshall, joined by Justice Brennan, concurred in the judgment.  Justice Marshall "agree[d] with the plurality that, as applied in this case, [the aggravated circumstance at issue was] unconstitutionally vague," 426 U.S. at 435 (Marshall, J., concurring in the judgment), but he also expressed the view that reversal was required on broader grounds.  Id. at 433, 435–42.

12

Id. at 428-29 (footnote omitted).  The plurality opinion subsequently added that there was "no principled way to distinguish this case, in which the death penalty was imposed, from the many cases in which it was not."  Id. at 433.

Following this decision, the Supreme Court of Delaware, in Petition of State for Writ, 433 A.2d 325 (1981), held that the statutory aggravating circumstance set out in Del. Code Ann. tit. 11, § 4209(e)(1)n -- that "[t]he murder was outrageously or wantonly vile, horrible, or inhuman" -- was, like its Georgia counterpart, too vague to channel a sentencer's discretion in a capital case.  As previously noted, this circumstance was found by the jury in Flamer's case, but three other statutory aggravating circumstances had also been proven.  Thus, in Flamer's direct appeal, the Supreme Court of Delaware was required to decide whether the jury's reliance on one vague statutory aggravating circumstance necessitated the reversal of Flamer's death sentence, even though other statutory aggravating circumstances had also been proven.

While Flamer's direct appeal was pending, the United States Supreme Court addressed a similar question in Zant v. Stephens, supra,  which again involved the Georgia capital sentencing scheme.[0]  In Zant, the jury had found that three statutory aggravating circumstances had been proven, and it had imposed a sentence of death.  462 U.S. at 866-67.  One of these statutory aggravating circumstances was subsequently held by the

_____

[0]Zant is discussed in greater detail below.  See infra pages 20-25.

13

Georgia Supreme Court to be too vague to satisfy the standard adopted in Godfrey. See id. at 867. Nevertheless, the United States Supreme Court held that reversal of the death sentence in Zant was not required. The Court, however, specifically reserved decision as to whether its holding would apply in so-called "weighing states," which have a capital sentencing scheme significantly different from Georgia's. Id. at 890.

After carefully analyzing the United States Supreme Court's decision in Zant and related cases, the Supreme Court of Delaware held that Flamer's sentence should be upheld. Flamer v. State, 490 A.2d at 131-36. The Supreme Court of Delaware held that Delaware is not a "weighing state" and wrote:

> While the jury in Delaware is told to weigh and consider certain circumstances, the fact that they are not told how to weigh them and that this "weighing" occurs at the discretionary stage, renders defendant's argument meaningless.

Id. at 135-36. The Delaware Supreme Court further found that the instructions had not placed excessive emphasis on the vague statutory circumstance and that the references to that circumstance were harmless. Id. at 136. Responding to Flamer's argument that two of the statutory aggravating factors -- that the murders were committed during the felony of robbery and that the murders were committed for pecuniary gain were duplicative -- the Delaware Supreme Court likewise observed that "nowhere did the trial court suggest `that the presence of more than one aggravating circumstance should be given special weight.'" 490 A.2d at 136 (quoting Zant, 461 U.S. at 891).

14

In his federal habeas corpus petition, Flamer renewed his argument that the jury's finding of one invalid statutory aggravating circumstance required the reversal of his death sentence, but the district court agreed with the analysis of the Supreme Court of Delaware. Flamer v. Chaffinch, 827 F. Supp. 1079, 1094-97 (D. Del. 1993). This appeal followed.

B. Bailey committed the two murders for which he was sentenced to death while assigned to the Plummer House, a work release facility in Wilmington, Delaware. Bailey v. Snyder, 855 F. Supp. 1392, 1396-97 (D. Del. 1993). After escaping from the Plummer House, Bailey appeared at the home of his foster sister, Sue Ann Coker, in Cheswold, Delaware. Id. at 1397. Bailey told his foster sister that he was upset and was not going back to the Plummer House. Id. A short time later, Bailey and Charles Coker, his foster sister's husband, left in Coker's truck to run an errand. Id. On the way, Bailey asked Coker to stop at a package store. Id. Bailey then entered the store and robbed the clerk at gunpoint. Id. Emerging from the store with a pistol in one hand and a bottle in the other, Bailey told Coker that the police would soon be arriving, and he asked to be dropped at Lambertson's Corner, about one and one-half miles away. Id. Coker complied and then drove back to the scene of the robbery, where he inquired about the clerk and telephoned the Delaware State Police. Id.

In the meantime, Bailey had entered the farmhouse of Gilbert Lambertson, age 80, and his wife, Clara Lambertson, age

15

73. Id. Bailey shot Gilbert Lambertson twice in the chest with a pistol and once in the head with the Lambertsons' shotgun. Id. at 1392. He shot Clara Lambertson once in the shoulder with the pistol and once in the abdomen and once in the neck with the shotgun. Id. Both Lambertsons died. Id.

Bailey fled from the scene but was spotted by a Delaware State Police helicopter unit as he ran across the Lambertsons' field. Id. He attempted to shoot the helicopter co-pilot with the pistol, but he was apprehended. Id.

Bailey was charged with first-degree murder and other offenses, and he was tried at approximately the same time as Flamer, but before a different judge. After the jury found Bailey guilty, the state sought the death penalty. Bailey v. State, 490 A.2d 158, 172 (Del. 1983). The state argued that it had established the existence of the following four statutory aggravating circumstances: (1) that the murders were committed by one who had escaped from a place of confinement,[0] (2) that the murders were committed while the defendant was engaged in flight after committing a robbery,[0] (3) that the defendant's course of conduct resulted in the deaths of two people where the deaths were a probable consequence of the defendant's conduct,[0] and (4) that the murders were "outrageously or wantonly vile, horrible, or inhuman."[0] Id. The judge gave the jury instructions that were virtually identical to those given in Flamer's case. Id. at

---

[0]Del. Code Ann. tit. 11, § 4209(e)(1)a.
[0]Del. Code Ann. tit. 11, § 4209(e)(1)j.
[0]Del. Code Ann. tit. 11, § 4209(e)(1)k.
[0]Del. Code Ann. tit. 11, § 4209(e)(1)n.

16

173. The jury then returned a verdict recommending the imposition of a death sentence. On an interrogatory form that is also virtually the same as that used in Flamer's case, the jury indicated that it had found that all four of the alleged statutory factors had been proven. See Bailey v. Snyder, 855 F. Supp. at 1409. The jury further indicated that, in recommending a death sentence, it had relied on two of those circumstances -- that the defendant's conduct had resulted in the deaths of two persons where the deaths were a probable consequence of the defendant's conduct and that the murders were outrageously or wantonly vile, horrible, or inhuman. Id.

On direct appeal, the Supreme Court of Delaware considered whether Bailey's death sentences had to be vacated because the jury had found the existence of one invalid statutory aggravating circumstances (i.e., that the murders were "outrageously or wantonly vile, horrible, or unhuman"). Bailey v. State, 490 A.2d at 172-74. The Delaware Supreme Court handed down its decisions regarding the death sentences in Flamer's and Bailey's cases on the same day. In Bailey's case, the State Supreme Court relied on its analysis in its Flamer opinion and affirmed Bailey's death sentence. Id. at 173-74.

Bailey subsequently filed the federal habeas petition that is now before us and argued, among other things, that the jury's finding of a single invalid statutory aggravating circumstance required the reversal of his death sentence. Bailey v. Snyder, 855 F. Supp. at 1408. Bailey's petition was assigned to a different district court judge from Flamer's, but the judge

17

in Bailey's case reached the same conclusion as the judge in Flamer's.  Agreeing with the Supreme Court of Delaware that Delaware is a "non-weighing state" and that Zant is the governing precedent, the district court held that the Bailey jury's finding of a single invalid statutory aggravating circumstance did not require the reversal of Bailey's death sentence.  Id. at 1408-11. Bailey then took this appeal.

II.

A.  On appeal, both Flamer and Bailey argue that Delaware is a "weighing" state; that Clemons v. Mississippi, supra, not Zant, is therefore the pertinent Supreme Court precedent; and that under Clemons the juries' reliance on one or more invalid statutory aggravating circumstances means that their death sentences cannot stand unless there is a judicial reweighing of the evidence without consideration of the invalid circumstances or unless it is determined that the juries' consideration of those circumstances was harmless.  In order to assess these arguments, it is necessary to explain the difference between what the Supreme Court has termed "weighing" and "non-weighing" states.

B.  At the time of the Supreme Court's decision in Furman v. Georgia, 408 U.S. 238 (1972), "sentencing juries had almost complete discretion in determining whether a given defendant would be sentenced to death . . . ."  Johnson v. Texas, 113 S. Ct. 2658, 2664 (1993).  "The guiding principle that

18

emerged from Furman was that the States were required to channel the discretion of sentencing juries in order to avoid a system in which the death penalty would be imposed in a `wanto[n]' and `freakis[h]' manner." Id. (citation omitted) (brackets in original). Since then, the Supreme Court has repeatedly said that a state's capital sentencing scheme "must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." Zant, 462 U.S. at 877; see also Tuilaepa v. California, 114 S. Ct. 2630, 2634 (1994); Arave v. Creech, 113 S. Ct. 1534, 1542 (1993); Godfrey, 446 U.S. at 428-29. This narrowing is typically achieved by permitting the imposition of a death sentence only if the trier of fact finds at either the guilt or penalty phase that at least one statutorily specified aggravating circumstance has been proven. See Tuilaepa, 114 S. Ct. at 2634; Lewis v. Jeffers, 497 U.S. 764, 774 (1990); Blystone v. Pennsylvania, 494 U.S. 299, 306-07 (1990). Such a finding makes a defendant "`eligible' for the death penalty." See Tuilaepa, 114 S. Ct. at 2634; Lewis, 497 U.S. at 774.

Because the aggravating factors listed in a state's capital sentencing statute perform this critical narrowing function, the Supreme Court has insisted that these factors be defined with some precision, for if they are too vague they can leave "the kind of open-ended discretion which was held invalid in Furman." Maynard v. Cartwright, 486 U.S. 356, 362 (1988). As previously explained, it was for this reason that the Court held

19

that the circumstance at issue in Godfrey -- whether the murders were "outrageously or wantonly vile, horrible or inhuman" -- was inadequate to channel the jury's eligibility determination. In Maynard v. Cartwright, 486 U.S. at 362, the Court subsequently reached the same conclusion with respect to the circumstance of whether the murder was "especially heinous, atrocious, or cruel." Although the statutorily defined aggravating circumstances at issue in Godfrey and Maynard refer to underlying considerations that may properly be taken into account in deciding whether a death sentence should be imposed, their flaw is that they do not adequately narrow the factfinder's discretion in determining whether a defendant should be found to be eligible for a death sentence. See Maynard, 486 U.S. at 361-62; Zant, 462 U.S. at 885-89.

"Once the jury finds that the defendant falls within the legislatively defined category of persons eligible for the death penalty," a state is free to allow "the jury . . . to consider a myriad of factors to determine whether death is the appropriate punishment." California v. Ramos, 463 U.S. 992, 1008 (1983). A state must permit the factfinder to consider all mitigating evidence. Eddings v. Oklahoma, 455 U.S. 104, 112 (1982); Lockett v. Ohio, 438 U.S. 586, 604-05 (1978). But a state has considerable leeway with respect to the role of aggravating factors at this stage. One permissible method is exemplified by the Georgia sentencing scheme at issue in Zant v. Stephens. Another permissible method is exemplified by the scheme discussed in Clemons v. Mississippi.

20

C.  Zant, as previously noted, involved the Georgia capital sentencing scheme.  Under that scheme, as described by the Georgia Supreme Court in response to a question certified from the Supreme Court of the United States, the factfinder at the penalty phase was first required to determine whether at least one of the aggravating circumstances enumerated by statute was present.  See 462 U.S. at 870-72.  If the factfinder found at least one of these circumstances, the factfinder was then required to "`consider[] all evidence in extenuation, mitigation and aggravation of punishment.'"  Id. at 871 (quoting 297 S.E.2d 1, 3-4 (1982)).

In Zant, after the defendant, Stephens, was found guilty of murder, the state requested that the jury impose the death penalty and argued that the following aggravating circumstances listed in the Georgia statute were present:  (1)(a) that the defendant had "a prior record of conviction for a capital felony" or (b) "a substantial history of serious assaultive criminal convictions"; (2) that the offense was "outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or aggravated battery to the victim"; and (3) that the defendant had escaped from lawful custody or confinement.  Id. at 865 n.1.  The jury imposed the death penalty and stated that it had found the presence of the aggravating circumstances labeled above as (1)(a) (that the defendant had a prior conviction for a capital felony), (1)(b) (that he had a substantial history of serious assaultive criminal

21

convictions), and (3) (that he had escaped from lawful custody or confinement).  Id. at 866–67.

The Georgia Supreme Court subsequently held in another case, Arnold v. State, 224 S.E.2d 386, 541–42 (Ga. 1976), that circumstance (1)(b) –– a "substantial history of serious assaultive criminal convictions" –– was unlawfully vague for Eighth Amendment purposes.  In light of this decision, the Georgia Supreme Court considered whether the jury's finding of this improper aggravating circumstance rendered Stephens's death sentence invalid.  The court concluded that it did not, because the other circumstances found by the jury adequately supported Stephens's sentence.  See Stephens v. State, 237 S.E.2d 259, 261–62, cert. denied, 429 U.S. 986 (1978); Stephens v. Hopper, 247 S.E.2d 92, 97–98, cert. denied, 439 U.S. 991 (1978).

The Fifth Circuit, however, held that the jury's consideration of this circumstance rendered Stephens's sentence unconstitutional.  Among other things, the Fifth Circuit concluded that the reference to this factor in the jury instructions "may have unduly directed the jury's attention to [Stephens's] prior convictions."  Stephens v. Zant, 648 F.2d 446 (5th Cir. 1981).  The Fifth Circuit added that it could not be "determined with the degree of certainty required in capital cases that the instruction did not make a critical difference in the jury's decision to impose the death penalty."  Id.

The Supreme Court reversed.  The Court noted that the finding of a statutory aggravating circumstance played a limited role under the Georgia scheme.  Such a finding "narrow[ed] the

22

class of persons convicted of murder who are eligible for the death penalty" but did not thereafter "play any role in guiding the sentencing body in the exercise of its discretion." 462 U.S. at 874. Concluding that this scheme sufficiently structured the sentencer's discretion, the Court wrote:

> Our cases indicate . . . that statutory aggravating circumstances play a constitutionally necessary function at the stage little difference between such an instruction and the one actually given. Id. The Court thus commented that "[t]he effect the erroneous instruction may have had on the jury is tactors in the process of <u>selecting, from among that class, those defendants who will actually be sentenced to death</u>.

<u>Id.</u> at 878 (emphasis added).

The Court then considered whether, under this scheme, the jury's finding of one vague statutory aggravating circumstance necessitated the reversal of Stephens's death sentence even though other valid statutory aggravating circumstances were also found. The Court held that it did not. After noting that the jury had "found aggravating circumstances that were valid and legally sufficient to support the death penalty," <u>id.</u> at 881, the Court rejected Stephens's argument that reversal was necessary because the trial judge's instructions concerning the invalid statutory aggravating circumstance "may have affected the jury's deliberations," <u>id.</u> at 885. The Court wrote:

> In analyzing this contention it is essential to keep in mind the sense in which that aggravating circumstance is `invalid.' It is not invalid because it authorizes the jury to draw adverse inferences from conduct that is

23

> constitutionally protected. . . . Georgia
> [has not] attached the `aggravating' label to
> factors that are constitutionally
> impermissible or totally irrelevant to the
> sentencing process, such as for example the
> race, religion, or political affiliation of
> the defendant, . . . or to conduct that
> actually should militate in favor of a lesser
> penalty, such as perhaps the defendant's
> mental illness.

Id. at 885 (citations omitted). Rather, the Court observed, the circumstance in question had been found to be invalid because it failed "to provide an adequate basis for distinguishing a murder case in which the death penalty may be imposed from those cases in which such a penalty may not be imposed." Id. at 886. But the Court pointed out that "[t]he underlying evidence [was] nevertheless fully admissible at the sentencing phase." Id.

Responding to the Fifth Circuit's statement that the judge's instruction "may have unduly directed the jury's attention to [Stephens's] prior conviction," the Supreme Court assumed that the instruction had in fact "induc[ed] the jury to place greater emphasis upon the [defendant's] prior criminal record than it would otherwise have done." Id. at 888. The Court held, however, that this emphasis had not violated Stephens's constitutional rights. The Court stated that it would have been constitutional for the trial judge to instruct the jury that "it would be appropriate to take account of a defendant's prior criminal record in making its sentencing determination," id., and the Court saw little difference between such an instruction and the one actually given. Id. The Court thus commented that "[t]he effect the erroneous instruction may have

24

had on the jury is therefore merely a consequence of the statutory label `aggravating circumstance.'" Id. While "[t]hat label arguably might have caused the jury to give somewhat greater weight to [the defendant's] prior criminal record than it otherwise would have given," the Court observed, "any possible impact cannot fairly be regarded as a constitutional defect in the sentencing process." Id. at 888-89 (emphasis added). In reaching this conclusion, however, the Court withheld opinion "concerning the possible significance of a holding that a particular aggravating circumstance is `invalid' under a statutory scheme in which the judge or jury is specifically instructed to weigh statutory aggravating and mitigating circumstances in exercising its discretion whether to impose the death penalty." Id. at 890.

D. The Court considered a sentencing scheme of this latter type in Clemons v. Mississippi, supra. Under the Mississippi scheme, like the Georgia scheme, the factfinder at the penalty phase of a capital case was first required to find the presence of at least one statutory aggravating circumstance. See 494 U.S. at 744-45. But the two schemes differed with respect to the next step that the factfinder was instructed to perform. Whereas the Georgia scheme called for the factfinder to consider all aggravating evidence, the Mississippi scheme required the factfinder to consider only those aggravating elements enumerated in the statute and to weigh those elements against the mitigating circumstances. See id. at 743 n.1, 745

25

n.2.  The Clemons Court -- employing terminology that can be quite misleading in the context of the cases now before us -- described Mississippi as a "weighing" state because its statute called for the jury to "weigh" the statutory aggravating circumstances against the mitigating circumstances.  See id. at 748-49.

In Clemons, the jury found the presence of two statutorily defined aggravating factors -- that the murder was committed during a robbery for pecuniary gain and that the murder was "especially heinous, atrocious, or cruel."  Id. at 742. Concluding that these factors outweighed any mitigating circumstances, the jury imposed a sentence of death.  Id.  The second of the statutory aggravating factors was later held to be unconstitutionally vague for Eighth Amendment purposes.  See Maynard, 486 U.S. at 362.  Noting that Mississippi was a "weighing state" and that the jury had weighed this statutory factor in imposing a death sentence, the Court vacated that sentence and remanded for the Mississippi Supreme Court to determine whether the remaining valid statutory aggravating circumstance outweighed the mitigating circumstances or to conduct a harmless error review.  See 494 U.S. at 741.

In subsequent decisions, the Supreme Court has provided explanations of the reasoning on which the holding in Clemons rests.  For example, in Sochor v. Florida, 112 S. Ct. 2114, 2119 (1992), the Court explained:[0]

_____

[0]Similarly, in Stringer v. Black, 503 U.S. 222, 231 (1992), the Court observed that "[i]n a nonweighing state, so long as the

26

In a weighing state . . . there is Eighth Amendment error when the sentencer weighs an "invalid" aggravating circumstance in reaching the ultimate decision to impose a death sentence.  See Clemons v. Mississippi, 494 U.S. 738, 752, 110 S. Ct. 1441, 1450, 108 L.ed.2d 725 (1990).  Employing an invalid aggravating factor in the weighing process "creates the possibility . . . of randomness," Stringer v. Black, 503 U.S. ____, _____, 112 S. Ct. 1130, 1139, 117 L.ed.2d 367 (1992), by placing a "thumb [on] death's side of the scale," id. at _____, 112 S. Ct. at 1137, thus "creat[ing] the risk [of] treat[ing] the defendant as more deserving of the death penalty," id. at _____, 112 S. Ct. at 1139.  Even when other valid aggravating factors exist as well, merely affirming a sentence reached by weighing an invalid aggravating factor deprives a defendant of "the individualized treatment that would result from actual reweighing of the mix of mitigating factors and aggravating circumstances." Clemons, supra, 494 U.S. at 752, 110 S. Ct. at 1450 . . . .

---

sentencing body finds at least one valid aggravating factor, the fact that it also finds an invalid aggravating factor does not affect the formal process of deciding whether death is an appropriate penalty."  In a "weighing" state, however, the Court observed:

[W]hen the sentencing body is told to weigh an invalid factor in its decision, a reviewing court may not assume it would have made no difference if the thumb had been removed from death's side of t260* ( (_ the death penalty.  On the other hand, those juries that concluded that the standard had not been met could not consider the defendant's prior convictions at all, andreceived an individualized sentence.

Id.

27

E. In order to illustrate the reason for the distinction that the Supreme Court has drawn between "non-weighing" states like Georgia and "weighing" states like Mississippi, it is helpful to compare how the effect of the invalid aggravating circumstance in Zant would differ at the selection step in the two types of states. As previously noted, the invalid statutory aggravating circumstance in Zant was "a substantial history of serious assaultive criminal convictions." Due to its vagueness, this standard created a serious danger that different juries would reach different conclusions based on identical facts. If, for example, a defendant had two prior convictions, one for a mugging and one for a barroom fight, some juries might well conclude that these convictions satisfied the standard, while others might well reach the opposite conclusion. At the "selection" step in a "non-weighing" state, however, this possibility would not carry with it an unacceptably high risk of altering the jury's ultimate sentencing decision. This is so because, whether or not the jury found that the standard had been met, it would still consider the same underlying facts, i.e., that the defendant had one prior conviction for a mugging and one for a barroom fight.

By contrast, in a "weighing" state, this vague standard would create an unacceptably high risk of affecting the jury's decision at the selection step. Those juries that concluded that the standard had been met could consider the defendant's prior convictions, and this factor might well tip the balance in favor of the death penalty. On the other hand, those juries that

28

concluded that the standard had not been met could not consider the defendant's prior convictions at all, and this might well tip the balance against the death penalty.  Accordingly, as the Supreme Court has put it, "[e]mploying an invalid aggravating factor in the weighing process `creates the possibility . . . of randomness,' . . . thus `creat[ing] the risk of treat[ing] the defendant as more deserving of the death penalty.'"  Sochor, 112 S. Ct. at 2119 (citations omitted; brackets in original).

F.  With this background in mind, it seems quite clear that Delaware is a "non-weighing" state.  Under the Delaware scheme, the jury at the selection step of the penalty phase is free to consider all relevant evidence in aggravation.  The jury is not restricted to the statutory aggravating factors.  In this critical feature, the Delaware scheme mirrors the Georgia capital sentencing scheme discussed in Zant and contrasts sharply with the Mississippi capital sentencing scheme discussed in Clemons. We therefore agree with the analysis of the Delaware Supreme Court and the district court judges who denied the petitions that are now before us.  See Flamer v. Chaffinch, 827 F. Supp. at 1095; Bailey v. Snyder, 826 F. Supp. at 822; Flamer v. State, 490 A.2d at 135.

Flamer's and Bailey's argument that Delaware is a "weighing" state is no more than a play on the use of the word "weigh" in the Delaware statute.  Flamer and Bailey argue that Delaware is a weighing state because the Delaware statute states that in the "selection" step the jury must "[u]nanimously

29

recommend[], after _weighing_ all relevant evidence . . . that a sentence of death be imposed." Del. Code Ann. tit. 11 §4209(d)(1)(b) (emphasis added). They distinguish the Georgia statute on the ground that it provided that "the judge shall _consider_, or he shall include in his instructions to the jury for it to _consider_, any mitigating circumstances or aggravating circumstances otherwise authorized by law and any of the following statutory aggravating circumstances which may be supported by the evidence . . . ." See _Zant_, 462 U.S. at 865 n.1. (emphasis added). Flamer and Bailey argue that Delaware is a "weighing" state simply because the Delaware statute instructs the jury to "weigh" (not consider) aggravating and mitigating circumstances. See Flamer Br. at 74; Bailey Br. at 64.

We reject these arguments. "[T]he difference between a weighing State and a non-weighing State is not one of `semantics.'" _Stringer_, 503 U.S. at 231. "The Supreme Court's weighing/non-weighing distinction does not turn simply on whether or not the word weighing appears in a state's statute." _Williams v. Calderon_, 52 F.3d 1456, 1477 (9th Cir. 1995). The fact that the Delaware statute employs the term "weigh" rather than the term "consider" is inconsequential for present purposes. The term "weigh" is defined as meaning "_consider_ or examine for the purpose of forming an opinion or coming to a conclusion" and "_consider_ carefully esp[ecially] by balancing one . . . thing against another in order to make a choice, decision or judgment," _Webster's Third New International Dictionary_ 2593 (1973) (emphasis added); similarly, a synonym of "consider" is "weigh."

Id. at 483.  Thus, the Delaware legislature's choice of the word "weighing" rather than "considering" is of no Eighth Amendment significance.


                              III.

        A.  Bailey and Flamer next argue that, even if Delaware is a "non-weighing" state, their death sentences must nevertheless be reversed because of the particular nature of the jury instructions and interrogatories used in their cases.  As we have mentioned, the instructions and interrogatories given in these two cases were virtually identical.  (The relevant portions of the instructions and interrogatories in both cases are set out in appendices to this opinion.)

        In both cases, the trial judges, quoting Del. Code Ann. tit. 11, § 4209(d)(1), told the jurors:

        A sentence of death shall not be imposed
        until the jury finds:

            1.  Beyond a reasonable doubt at least
        one statutory aggravating circumstance; and

            2.  Unanimously recommend, after
        weighing all relevant evidence in aggravation
        or mitigation which bears upon the particular
        circumstance or details of the commission of
        the offense and the character and
        propensities of the offender, that a sentence
        of death be imposed.


Appendix A, infra, at i (emphasis added); Appendix C, infra, at vi (emphasis added).  The judges also told the jurors that Delaware law specified certain statutory aggravating circumstances and that "[t]he State may likewise offer matters in

                               31

aggravation besides the statutory aggravating circumstances."

Appendix A, infra, at i (emphasis added); Appendix C, infra, at vi (emphasis added).

The judges then listed the statutory aggravating circumstances that the state contended had been proven in each case, and both judges also pointed out to the juries that their verdicts at the guilt phase had already established the existence of at least one statutory aggravating factor -- in Flamer's case that the murders had occurred during the commission of the felony of robbery,[0] and in Bailey's case that the defendant had caused the death of two persons where the deaths were the probable consequences of his conduct.

The judges subsequently told the juries:

> The law provides that a sentence of death shall not be imposed unless you find beyond a reasonable doubt at least one statutory aggravating circumstance and unanimously recommend, after weighing all relevant evidence in aggravation . . . and mitigation which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender, that a sentence of death be imposed.

See Appendix A, infra, at ii – iii (emphasis added); Appendix C, infra, at vii (emphasis added). Shortly thereafter, both judges reiterated:

> In conclusion, a sentence of death shall not be imposed unless you, the jury, find beyond a reasonable doubt that at least one statutory aggravating circumstance has been established and unanimously recommend a sentence of death be imposed after weighing

---

[0]See supra page 9.

> all relevant evidence in aggravation and
> mitigation which bear upon the particular
> circumstance and details of the commission of
> the offense and the character and
> propensities of the offender.

See Appendix A, infra, at iii (emphasis added); Appendix C, infra, at viii (emphasis added).

The judges then turned to the interrogatory forms that were used in both cases. The first question on these forms asked:

> 1. Does the jury unanimously find that
> the following statutory aggravating
> circumstance or circumstances exist?

See Appendix B, infra, at v; Appendix D, infra, at ix. This question was followed by a list of the statutory aggravating circumstances, and after each circumstance a spot was provided for the jury to check either "Yes" or "No."[0] Id. The judges in both cases instructed the juries to check these statutory aggravating circumstances if they found them to have been established beyond a reasonable doubt. Appendix A, infra, at iii–iv; Appendix C, infra, at viii.

The second interrogatory question was:
> 2. Does the jury unanimously recommend
> a sentence of death be imposed?

See Appendix B, infra, at v; Appendix D, infra, at ix. Under this question were spots for the jury to mark "Yes" or "No." Id.

_____

[0]In Flamer's case, three statutory aggravating circumstances were listed. One additional circumstance was deemed by statute to have been proven as a result of the jury's verdict at the guilt phase and was therefore not listed. See supra page 9. In Bailey's case, four statutory aggravating circumstances were listed.

33

The third and final question -- which is the focal point of the arguments concerning the jury instructions and interrogatories -- stated:

> 3. If the jury unanimously recommends that a sentence of death be imposed, please indicate which statutory aggravating circumstance or circumstances were relied upon.

See Appendix B, infra, at v; Appendix D, infra, at ix-x. This question, like the first, was followed by a list of statutory aggravating circumstances, and spaces were furnished under each circumstance for the jury to mark "Yes" or "No."[0] Id. The judges in both cases told the juries:

> If you recommend the death penalty, you will then indicate on the written interrogatory which statutory aggravating circumstance or circumstances . . . you relied upon in reaching your decision.

See Appendix A, infra, at iv; Appendix C, infra, at viii.

Based on these instructions and interrogatories, two separate arguments are made.

B.  The initial argument is that, even if the Delaware statute "on its face" created a "non-weighing" scheme, jury interrogatory #3 and the corresponding portion of the instructions converted the Delaware sentencing scheme "as applied" into a "de facto" weighing scheme. (For convenience, we will use the term "interrogatory #3" to refer to both the interrogatory itself and the corresponding portion of the instructions.). In support of this argument, it is contended

_____

[0]In both cases, four statutory aggravating circumstances were listed after interrogatory three.

34

that interrogatory #3 mistakenly suggested to the jury that, at the selection step, it could not rely on non-statutory aggravating circumstances but was limited to those aggravating circumstances set out in the Delaware statute. Accordingly, since it is the hallmark of a "weighing" scheme to require the jury at the selection step to rely on only the statutory aggravating factors, it is argued that interrogatory #3 made the Delaware scheme a "de facto" "weighing" scheme "as applied." We disagree with this argument for two reasons.

1. First, we believe that the instructions in both cases, when viewed in their entirety, made it quite clear that the juries, at the selection step, were free to consider any evidence in aggravation and thus were not required to restrict their consideration to only the statutory aggravating factors. In both cases, the trial judges instructed the juries three times that, at the selection step, they were to "weigh[] all relevant evidence in aggravation and mitigation which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender." Moreover, written copies of the instructions were given to the juries for their use during deliberations in both cases. Flamer JA at 1466; Bailey Tr. of 2/15/80 at 275-76. At a fourth place in the instruction, the juries were told that the state was permitted to "offer matters in aggravation besides the statutory aggravating circumstances." Thus, the juries in both cases were expressly, unambiguously, and repeatedly told that, at the

35

selection step, they were free to consider non-statutory aggravating circumstances.

While it is now argued that jury interrogatory #3 conveyed a conflicting message, it is important to note that this interrogatory did not expressly contradict the instructions quoted above. In other words, interrogatory #3 did not expressly inform the juries that they could not consider non-statutory aggravating evidence. Instead, as noted, interrogatory #3 merely told the juries that, if they unanimously recommended a death sentence, they should indicate "which statutory aggravating circumstance or circumstances were relied upon."[0] The worst that can fairly be said of the wording of this interrogatory question is that it _might_ be read to suggest that the jury could not recommend a death sentence unless it relied, at least in part, on a statutory aggravating circumstance.

It is, of course, well established that a jury instruction may not be judged "`in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). The same rule, we believe, should apply to a jury interrogatory. Therefore, in the cases now before us, we must consider the

---

[0]As noted, the corresponding portion of the instructions stated:

> If you recommend the death penalty, you will
> then indicate on the written interrogatory
> which statutory aggravating circumstance or
> circumstances . . . you relied upon in
> reaching your decision.

36

entire charge and interrogatories to determine whether, as a result of interrogatory #3, there was a "reasonable likelihood" that the jurors were led to believe that they could not consider non-statutory aggravating factors at the "selection" step. See Estelle, 112 S. Ct. at 482 n.4; Boyde v. California, 494 U.S. 370, 380 (1990); Rock v. Zimmerman, 959 F.2d 1237, 1247 & n.3 (3d Cir.) (in banc), cert. denied, 112 S. Ct. 3036 (1992).

As we have noted, the juries were expressly, clearly, and repeatedly instructed, orally and in writing, that at the "selection" step they were to weigh all relevant evidence in aggravation. We do not think that there was a "reasonable likelihood" that the juries, in the face of these express instructions, nevertheless inferred from interrogatory #3 that they were actually limited to considering the statutory aggravating circumstances. See Shannon v. United States, 114 S. Ct. 2419, 2427 (1994) (it is "'the almost invariable assumption of the law that jurors follow their instructions'") (quoting Richardson v. Marsh, 481 U.S. 200, 206 (1982)). If the jury in either case had interpreted interrogatory #3 as implying such a restriction -- and thus as directly conflicting with the clear and explicit instructions repeatedly given by the trial judges -- the reasonable thing for the jury to have done would have been to have asked for clarification on this point. But no such request was made in either case.[0]

---

[0] It is noteworthy that none of the participants in either trial seemed to think that this wording presented any problems. As noted, the same interrogatory form was used and the same corresponding instructions were given by two different trial

For these reasons, we are convinced that the instructions and interrogatories in each case, when viewed in their entirety, made it clear that the jury, at the selection step, was free to consider all evidence in aggravation, and was not limited to the statutory aggravating circumstances.

2. Second, even if this point had not been made clear and the juries had been left with the mistaken belief that they could consider only the statutory aggravating circumstance at the selection step, we are at a loss to understand how this could have materially prejudiced these defendants. It is not claimed that interrogatory #3 restricted the juries in their consideration of any evidence in mitigation, i.e., any evidence that might have been helpful to the defendants. Instead, it is claimed that interrogatory #3 improperly restricted the aggravating evidence that the juries could consider. We can understand how an improper restriction on aggravating evidence could harm the prosecution, but it simply makes no sense to argue that death sentences should be overturned because the juries were unduly restricted in their consideration of the evidence militating in favor of the death penalty.

C. The remaining argument is that the references to invalid statutory aggravating circumstances in the instructions

_____

judges. The record does not reflect that either Flamer's or Bailey's trial counsel objected to the wording of interrogatory #3 or the corresponding portion of the instructions. Moreover, although the implication now attributed to interrogatory #3 was potentially damaging to the prosecution, the prosecutors did not object to this wording in either case.

38

and interrogatories in these two cases violated the Eighth Amendment because they led the juries to give much greater weight or consideration to the facts underlying the invalid statutory aggravating circumstances than those facts would otherwise have received. We see no merit in this argument.

In large part, this argument relies on the effect of the statutory label "aggravating circumstance," and to this extent this contention is foreclosed by the Supreme Court's decision in Zant. There, as previously noted, the Supreme Court recognized that such a label "arguably might have caused the jury to give somewhat greater weight to petitioner's prior criminal record than it otherwise would have given." 462 U.S. at 888. Nevertheless, the Court held that "any possible impact" resulting from the use of that label "could not fairly be regarded as a constitutional defect in the sentencing process." Id. at 889 (footnote omitted).

While Zant would thus appear to be controlling, it is argued that in the cases now before us interrogatory #3, by suggesting that the juries could not consider non-statutory aggravating factors at the selection step, placed far more emphasis on the invalid factors than occurred in Zant. There are, however, at least three fatal flaws in this argument.

First, we see no difference of constitutional dimension between the directions given to the jury in these cases and those given to the jury in Zant. In the cases now before us, interrogatory #3 and the corresponding portion of the instructions told the juries that, if they unanimously

39

recommended a death sentence, they should indicate "which statutory aggravating circumstance or circumstances were relied upon."   In Zant, the jury was told:

> If the jury verdict on sentencing fixes punishment at death by electrocution, you shall designate in writing, signed by the foreman, the aggravating circumstance or circumstances which you have found to have been proven beyond a reasonable doubt.

462 U.S. at 866.

Second, as discussed above, we reject the argument that the instructions and interrogatories in the cases before us, when considered in their entirety, created a "reasonable likelihood" that the juries were led to believe that, at the selection step, they were not free to consider all evidence in aggravation, as opposed to only the statutory aggravating circumstances.

Finally, even if the juries had believed that they could not consider non-statutory aggravating factors at the selection step, this would not have naturally caused the juries to give the facts underlying the invalid statutory aggravating circumstances any greater weight than those facts would have otherwise received.  An example may help to clarify this point. Suppose that, at the selection step in a non-weighing state like Delaware, there are three items of aggravating evidence.  One item does not fall within any of the statutory aggravating circumstances; let us say it is a prior history of convictions for property crimes.  Another item falls within an unobjectionable statutory aggravating circumstance; let us say that this item is the killing of more than one person.  The final

40

item falls within a vague statutory aggravating circumstance. Let us say that the vague statutory aggravating circumstance is that the murders were "heinous," and let us say that the prosecution contends that the murders were "heinous" because they were carried out in a particularly painful manner.  If the jury in this hypothetical case was erroneously led to believe that it could not consider non-statutory factors at the selection step, the jury would not consider the first item -- the prior history of convictions for property crimes.  But we do not understand why this unwarranted restriction would result in the jury's giving the facts underlying the vague factor -- that the murders were allegedly committed in a particularly painful manner -- any greater weight than those facts would have otherwise received. The jury would consider the second and third statutory factors; and as we explicate supra in Part II C, the third factor, because it was specific aggravating evidence of the painful manner of causing death in this case, would be relevant.  See Zant, 462 U.S. at 885.  The fact that the jury considered only two of the three permissible aggravating factors would not give wundue weight to either of the two factors considered; nor would the jury consider any impermissible factor.  Id.  Hence, we are unpersuaded by the argument that the erroneous message allegedly conveyed by interrogatory #3 in the cases before us somehow led the juries to give greater weight to the facts underlying the invalid statutory aggravating circumstances.

For all these reasons, we reject the contention that these cases can be distinguished from Zant on the ground that the

41

references in these cases to invalid statutory aggravating circumstances led the juries to give much greater weight to the facts underlying those circumstances.  On the contrary, we find <u>Zant</u> to be controlling, and we therefore reject the petitioners' arguments.[0]

IV.

We now turn to Bailey's additional arguments.[0]  We will first discuss those that concern the guilt phase of his trial, and will then address those that pertain to the penalty phase.

A.   <u>Guilt Phase</u>.

1.  Bailey first argues that the trial court violated his constitutional right to an impartial jury by denying his request for a change of venue due to prejudicial pretrial publicity in Kent County, where the murders occurred.  Bailey does not contend that any of the jurors who sat on his case were biased or that the trial judge erred in denying any challenges for cause.  Rather, Bailey maintains that "the publicity in this case . . . combined with widespread contact by members of the

---

[0]While we do not find constitutional error in these cases, we strongly disapprove of the practice of a judge in a non-weighing state using a jury interrogatory that asks which statutory aggravating circumstance the jury "relied upon" in recommending the death penalty.  Because statutory aggravating circumstances have no special significance at the "selection" phase, such an interrogatory is potentially misleading and injects unnecessary confusion into the jury's deliberations.

[0]As noted, Flamer's other arguments are addressed in a separate panel opinion that is being filed simultaneously with this opinion.

[venire] prior to trial resulted in . . . such a `wave of public passion' that made a fair trial unlikely in Kent County no matter the record assurances of impartiality of the twelve jurors who decided Bailey's fate."  Bailey Br. at 31.

Bailey's argument relies chiefly on Irvin v. Dowd, 366 U.S. 717 (1961), which "held that adverse pretrial publicity can create such a presumption of prejudice in a community that the jurors' claims that they can be impartial should not be believed."  Patton v. Yount, 467 U.S. 1025, 1031 (1984).  Irvin, however, was a case involving "extraordinary publicity," Mu'Min v. Virginia, 500 U.S. 415, 427 (1991), that had a remarkably prejudicial effect on the minds of potential jurors.  See id. at 428.  In order to invoke Irvin's presumption of prejudice, "[t]he community and media . . . reaction must have been so hostile and so pervasive as to make it apparent that even the most careful voir dire process would be unable to assure an impartial jury."  Rock v. Zimmerman, 959 F.2d at 1252.  "Such cases are exceedingly rare."  Id. at 1253.  See also United States v. De Peri, 778 F.2d 963, 972 (3d Cir. 1985) ("It is the rare case in which adverse pretrial publicity will create a presumption of prejudice that overrides the jurors' assurances that they can be impartial.").

The record in this case falls far short of satisfying the Irvin standard.  In support of his motion for a change of venue, Bailey relied on a series of articles in the Delaware State News that appeared between May 22, 1979, the day after the murders, and June 13, 1979.  The Delaware Supreme Court accurately characterized these stories as follows:

43

> [T]he articles were indisputably factual in nature, but prejudicial and inflammatory only to the extent arising from the normal and natural reaction to any purely factual news item about a very serious crime.

490 A.2d at 162. In addition, as the Delaware Supreme Court noted, many of the stories centered, not so much on Bailey or the facts of the murders, but on the political controversy about the work release program. See Bailey Joint Appendix ("Bailey JA") at 247, 250, 252, 254, 255, 258. We have read the articles on which Bailey relied, and we conclude that they are neither quantitatively nor qualitatively comparable to the publicity in Irvin. Indeed, the pretrial publicity in this case was clearly no more extensive or prejudicial than that in cases such as Mu'Min,[0] Patton,[0] Murphy v. Florida, 421 U.S. 794, 799 (1974), and United States v. Provenzano, 620 F.2d 985, 995-96 (3d Cir.), cert. denied, 449 U.S. 899 (1980), in which no presumption of prejudice was found.

It is also significant that there was a lapse of eight months between the publication of the last newspaper story on which Bailey relied (June 13, 1979) and the start of jury selection (February 12, 1980). "That time soothes and erases is a perfectly natural phenomenon, familiar to all." Patton, 467 U.S. at 1034. In Murphy, the Supreme Court noted that extensive publicity had stopped about seven months before jury selection and found no presumption of prejudice. 421 U.S. at 802. See

---

[0] See 500 U.S. at 418-19.
[0] See Yount v. Patton, 710 F.2d 956, 962-63 (3d Cir. 1983), rev'd, 467 U.S. 1025 (1984).

44

also <u>Patton</u>, 467 U.S. at 1035 n.11.  In this case, the Delaware Supreme Court appropriately reached a similar conclusion.  490 A.2d at 162.

Finally, the effect of the publicity in this case on the members of the venire was not at all comparable to that in <u>Irvin</u> -- or even in <u>Patton</u>.  "In <u>Irvin</u>, the trial court excused over half of a panel of 430 persons because their opinions of the defendant's guilt were so fixed that they could not be impartial, and 8 of the 12 jurors who sat had formed an opinion as to guilt."  <u>Mu'Min</u>, 500 U.S. at 428.  In <u>Patton</u>, "all but 2 of the 163 veniremen questioned about the case had heard of it," "77% . . . admitted they would carry an opinion into the jury box," and "8 of the 14 jurors and alternates actually seated admitted that at some time they had formed an opinion as to [the defendant's] guilt."  467 U.S. at 1029.

In this case, Bailey cannot show that the pretrial publicity or the community familiarity with the case had any comparable effect on the members of the venire.  The most that Bailey claims is that about one-half of the venirepersons answered in the affirmative when they were asked a group of eight questions touching on many matters in addition to familiarity with the case.[0]  Moreover, only one juror and one alternate were taken from the group of venirepersons who answered any of these

_____

[0]These questions concerned the venirepersons' bias for or against the defendant, as well as their familiarity with the case, the defendant, the attorneys, the prospective witnesses, the victims and their family members, and any employees of a police agency or the state Attorney General's office.  <u>See</u> 855 F. Supp. at 1406.

45

questions in the affirmative; neither of these two individuals expressed any familiarity with the case; and Bailey did not move to excuse either for cause. See 855 F. Supp. at 1407-08.

For these reasons, we hold that no presumption of prejudice is justified in this case and that the trial judge's denial of Bailey's motion for a change of venue did not violate Bailey's constitutional right to an impartial jury.

2. Bailey next contends that his constitutional right to due process was violated as a result of improper statements made by the prosecution during closing argument at the guilt phase of his trial. The district court analyzed this argument at length and concluded that it did not provide a basis for granting the writ. See 855 F. Supp. at 1402-04. We are in essential agreement with the district court's analysis.

Bailey did not raise this argument at trial, and when he first raised it during the state post-conviction proceedings, it was found to have been procedurally defaulted under state law. See Bailey JA at 19-24, 37a. Thus, federal habeas review of this claim is barred unless Bailey can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 724 (1991).

Bailey contends that he demonstrated "cause" because his trial attorneys' failure to object at trial violated his constitutional right to the effective assistance of counsel pursuant to the standard set out in Strickland v. Washington, 466

46

U.S. 668 (1984).  Such a violation would provide "cause," see

Coleman, 501 U.S. at 724; Carrier, 477 U.S. at 488, but we agree

with the district court, 855 F. Supp. at 1402-04, and the state

Superior Court, Bailey JA at 23, that Bailey has not shown that

his experienced attorneys were constitutionally deficient.  One

of these attorneys, Howard Hillis, testified that he decided not

to object at trial for strategic reasons; this explanation was

credited by the Superior Court, Bailey JA at 22; and that finding

is binding on us in this proceeding.  See 28 U.S.C. § 1254(d).

In addition, as the district court observed:
> [I]t was objectively reasonable for Hillis to
> conclude that the prosecutor's acerbic
> comments undermined the State's case more
> than they hurt Bailey's case.  It was also
> objectively reasonable for Hillis to respond
> to the prosecutor's remarks by addressing
> them in his own closing argument rather than
> by making an objection, as Hillis believed
> the trial judge would not be receptive to
> such an objection.

855 F. Supp. at 1404.


Furthermore, we agree with the district court, id., and

the state Superior Court, Bailey JA at 23, that Bailey has not

shown that his attorneys' failure to object at trial resulted in

"prejudice" under the Strickland test -- i.e., that "there is a

reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different."

Strickland, 466 U.S. at 694.  We also hold that failure to

consider Bailey's argument would not "result in a fundamental

miscarriage of justice."  Coleman, 501 U.S. at 724.  Moreover,

even if we were to consider Bailey's argument, we would concur

47

with the district court that Bailey has not shown that the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." 855 F. Supp. at 1404 (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). See also, e.g., Dardan v. Wainwright, 477 U.S. 168, 181 (1986); Todaro v. Fulcomer, 944 F.2d 1079, 1082 (3d Cir. 1991), cert. denied, 503 U.S. 909 (1992).

3. Bailey's final argument concerning the guilt phase of his trial is that his constitutional right to due process was violated when the trial judge, in his jury instructions, described a "reasonable doubt" as a "substantial doubt." Bailey contends that this instruction was unconstitutional under Cage v. Louisiana, 498 U.S. 39 (1990). However, Bailey did not object to this instruction at trial, and the Delaware courts held in the post-conviction proceedings that his objection was procedurally barred under state law. See Bailey JA at 26, 37a. Bailey contends that he is nevertheless entitled to federal habeas review because he has demonstrated "cause" and "prejudice." He maintains that "cause" was established because his attorneys' failure to object at trial constituted constitutionally ineffective assistance. We hold that Bailey's reasonable doubt claim must be rejected.

We agree with the district court that federal habeas review of this claim is barred due to Bailey's procedural default.[0] Although Bailey contends that the allegedly

_____

[0]The district court also held, and the state has argued on appeal, that the nonretroactivity principle of Teague v. Lane,

48

ineffective assistance of his trial attorneys demonstrated "cause" for this default, we find this argument to be insubstantial. Bailey's trial occurred long before Cage. Just one year before Bailey's trial, the Delaware Supreme Court had approved an instruction virtually identical to the one given here. See Wintjen v. State, 398 A.2d 780, 781 n.2 (Del. 1979). In addition, the use of the phrase "substantial doubt" was supported by federal case law. See United States v. Smith, 468 F.2d 381, 383 (3d Cir. 1972) ("Reasonable doubt of itself is substantial . . . . It is sufficient if the jury understands reasonable doubt to mean `a real or substantial doubt' generated by the evidence or lack of it."). Under the circumstances, the failure of Bailey's attorneys to object to the reference in the instructions to "substantial doubt" did not fall below an objective standard of reasonableness. Strickland, 466 U.S. at 687-91. Consequently, Bailey's attorneys did not render constitutionally ineffective assistance, and Bailey cannot show "cause" for the procedural default.

---

489 U.S. 288, 300 (1989), precludes consideration of Bailey's Cage argument. The question whether Cage may be applied retroactively in habeas proceedings has divided the courts of appeals. Compare Skelton v. Whitley, 950 F.2d 1037, 1043 (5th Cir. 1992), cert. denied, 113 S. Ct. 102 (1992) (not retroactive) with Adams v. Aiken, 41 F.3d 175, 177-78 (4th Cir. 1994), cert. denied. 115 S. Ct. 2281 (1995) (retroactive) and Nutter v. White, 39 F.3d 1154 (11th Cir. 1994) (same). While the question of retroactivity under Teague should be decided before reaching the merits of a habeas claim, see Caspari v. Bohlen, 114 S. Ct. 948, 953 (1994), neither binding precedent nor logic seems to require that the question of retroactivity be considered prior to the question of procedural default. Accordingly, we have turned first to the question of procedural default and have thus found it unnecessary to reach the complicated issues related to Teague.

Moreover, failure to consider Bailey's claim will not result in a "fundamental miscarriage of justice," Coleman, 501 U.S. at 750.  We find strong support for this holding in Viktor v. Nebraska, 114 S. Ct. 1239 (1994).  In Viktor, the Supreme Court held that due process was not violated by jury instructions that described reasonable doubt as follows:

> A reasonable doubt is an actual and substantial doubt arising from the evidence, from the facts or circumstances shown by the evidence, or from the lack of evidence on the part of the state, as distinguished from a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture.

Id. at 1249 (emphasis added).  The Court noted two definitions of the term "substantial":  "not seeming or imaginary" and "that specified to a large degree."  Id. (quoting Webster's Third New International Dictionary, 2280 (2d ed. 1979)).  Finding the first definition "unexceptionable" but the latter ambiguous, the Court wrote:

> Any ambiguity, however, is removed by reading the phrase in the context of the sentence in which it appears:  "A reasonable doubt is an actual and substantial doubt . . . as distinguished from a doubt arising from mere possibility, from mere imagination, or from fanciful conjecture."  This explicit distinction between a substantial doubt and a fanciful conjecture was not present in the Cage instruction.

Id. at 1250.

We find the challenged portion of the jury instructions in this case to be essentially the same as that in Viktor.  Here, the judge told the jury:

50

> Reasonable doubt <u>does not mean a vague,</u>
> <u>speculative or whimsical doubt, nor a mere</u>
> <u>possible doubt, but a substantial doubt</u> and
> such a doubt as intelligent, reasonable and
> impartial men and women may honestly
> entertain after a careful and conscientious
> consideration of the evidence in the case.

Bailey JA at 168-69. Thus, just as the <u>Viktor</u> instruction contrasted a "substantial doubt" with "a doubt arising from a mere possibility, from bare imagination, or from fanciful conjecture," the instruction here contrasted a "substantial doubt" with "a mere possible doubt," "a vague, speculative" doubt, and a "whimsical doubt."

It is true that the Supreme Court in <u>Viktor</u> went on to observe that "[i]n any event," the instruction in that case provided an accurate, "alternative definition of reasonable doubt, a doubt that would cause a reasonable person to hesitate to act." 114 S. Ct. at 1250. However, as Supreme Court's use of the phrase "in any event" suggests, we do not interpret the Court's opinion to mean that this alternative definition was essential to its holding. Accordingly, we believe that <u>Viktor</u> supports the constitutionality of the challenged instruction in this case and, in any event, clearly shows that it did not result in a fundamental miscarriage of justice.

B. <u>Penalty Phase</u>. Bailey contends that his death sentences should be overturned for two reasons in addition to those discussed in Parts II and III of this opinion.

51

1.  First, Bailey argues that certain statements made by the prosecutors during opening and closing arguments at the penalty hearing violated his right to due process.  However, Bailey's attorneys did not object to any of these comments, and his argument concerning these remarks was held in the state post-conviction proceedings to be barred for procedural default under state law.  Although Bailey contends that his attorneys' failure to object amounted to constitutionally ineffective assistance and thus established "cause" for the procedural default, we agree with the district court, for essentially the same reasons explained in that court's opinion, that Bailey did not satisfy either prong of the Strickland test and that federal habeas review of this claim is therefore barred.  See 855 F. Supp. at 1406.

2.  Second, Bailey maintains that the trial court violated his constitutional rights by instructing the jury at the penalty phase that, by virtue of its verdicts finding Bailey guilty of the first-degree murders of Gilbert and Clara Lambertson, it had already found the existence of one of the statutory aggravating circumstances -- engaging in a "course of conduct [that] resulted in the deaths of 2 or more persons where the deaths are a probable consequence of the defendant's conduct."  Del. Code Ann. tit. 11, § 4209 (e)(1)k.  Relying on Arizona v. Rumsey, 467 U.S. 203 (1984), Bailey argues that "a penalty hearing is `like a trial' on the issue of punishment."  Bailey's Br. at 70.  Bailey then notes that due process prohibits the use of conclusive presumptions at a trial, see Sandstrom v.

<u>Montana</u>, 442 U.S. 510 (1979), and he likens the judge's instruction to a conclusive presumption. He consequently argues that the court's instruction violated due process.

We see no merit in this argument. The guilt and penalty phases of a capital trial are parts of a single proceeding, and there is no constitutional requirement that they be treated as if they were two entirely separate trials. The Supreme Court has held that a state may constitutionally employ a plan that provides for the same jury to sit in both the guilt and penalty phases of a capital murder trial. See <u>Lockhart v. McCree</u>, 476 U.S. 162, 180-81 (1986); <u>Gregg v. Georgia</u>, 428 U.S. 153, 160, 163 (1976) (opinion of Stewart, Powell, and Stevens, J.J.). When such a plan is used, evidence that is admitted at the guilt phase may be considered by the jury at the penalty phase. <u>Lockhart</u>, 476 U.S. at 180-81. Furthermore, the finding of a statutory aggravating circumstance may occur either at the guilt or penalty phase. See <u>Tuilaepa</u>, 114 S. Ct. at 2634 ("[W]e have indicated that the trier of fact must . . . find one `aggravating circumstance' (or its equivalent) at either the guilt or penalty phase."); <u>Lowenfield v. Phelps</u>, 484 U.S. 231, 244-46 (1988). We therefore see no federal constitutional error in the trial court's instructing the jury that its verdicts at the guilt phase (finding that Bailey had murdered Gilbert and Clara Lambertson) had already established the existence of one statutory aggravating circumstance (that his conduct had "resulted in the deaths of 2 or more persons where the deaths [were] the probable consequence of the defendant's conduct").

53

In any event, even if this instruction were erroneous, the error would be harmless.[0]  Since the jury had just found Bailey guilty of intentionally killing the two Lambertsons, there can be no reasonable doubt that, even if the challenged instruction had not been given, the jury would have found at the penalty phase that Bailey had engaged in conduct that caused the deaths of two people and that these deaths were the probable consequences of his conduct.[0]

---

[0] In an effort to suggest that the jury might not have found the existence of this statutory aggravating circumstance were it not for the challenged instruction, Bailey points out that the jury sent a note to the trial judge during its deliberations stating that it was "troubled somewhat with the word `probable' in the third statutory aggravating circumstance listed in [the] charge." Bailey JA at 200(A).  Bailey seems to suggest that this note revealed that the jury was not sure whether the deaths of the Lambertsons were the "probable" consequence of Bailey's conduct. This suggestion, however, appears far-fetched.  Since the same jury had found in the verdicts returned on Friday, February 22, 1980, that Bailey had <u>intentionally</u> killed the Lambertsons, it is hard to see how the jury could doubt on Monday, February 25, 1980, when the note was sent to the judge, that the Lambertsons' deaths were the <u>probable consequences</u> of Bailey's conduct.

There is a far more likely explanation for the jury's note: the jury may not have understood that the probability standard set out in the statutory aggravating circumstance was merely the <u>minimum</u> necessary.  In other words, since the evidence showed that Bailey shot both Lambertsons multiple times at close range with a shotgun and pistol and since the jury had already found that he intended to kill them, the jury may not have completely understood that the probability standard in the statutory aggravating circumstance could be satisfied by proof that the Lambertsons' deaths were not merely the probable consequences of Bailey's conduct but the intended and almost certain consequences of those actions.  Accordingly, we are convinced that any error was harmless.

[0] In a habeas proceeding, the appropriate harmless error standard is "whether the error `had substantial and injurious effect or influence in determining the jury's verdict.'" <u>Brecht v. Abrahamson</u>, 113 S. Ct. 1710, 1722 (1993) (quoting <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946)). <u>See also</u> <u>O'Neal v.</u>

V.

In summary, we reject Bailey's and Flamer's arguments concerning the references in the jury instructions and interrogatories to certain vague or duplicative aggravating circumstances. We also reject all of Bailey's remaining arguments. Accordingly, the orders of the district court denying the petitions for writs of habeas corpus will be affirmed in both cases.

---

McAninch, 115 S. Ct. 992 (1995). That standard was plainly met here.

APPENDIX A

<u>Flamer</u> Jury Instructions (<u>Flamer</u> JA at 1460-65)


I shall instruct you as to the applicable principles of law governing the punishment to be imposed in this case. No single one of these instructions states all of the law applicable to this determination. Therefore, you should listen to and consider all the instructions together. You are to apply the law to these facts and in this way decide the punishment to be imposed in the case.


The criminal code says as follows: "Upon a conviction of guilt of a defendant of first degree murder, the Superior Court shall conduct a separate hearing to determine whether the defendant shall be sentenced to death or to life imprisonment without benefit of probation or parole.


"A sentence of death shall not be imposed until the jury finds:


"1. Beyond a reasonable doubt at least one statutory aggravating circumstances; and


56

"2.  Unanimously recommend, after weighing all relevant evidence in aggravation or mitigation which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender, that a sentence of death be imposed.  Where the jury submits such a finding and recommendation, the Court will sentence the defendant to death.  A finding by the jury of a statutory aggravating circumstance, and a consequent recommendation of death, supported by the evidence, shall be binding on the Court."

The Delaware law specifies certain statutory aggravating circumstances which the State may contend exist in a particular case.  The law does not specify mitigating circumstances, but the defense may offer evidence relating to any mitigating circumstances which it contends exist in a particular case.  The State may likewise offer matters in aggravation besides the statutory aggravating circumstances.

An aggravating circumstance is a factor which tends to make the defendant's conduct more serious, or

- i-

57

the imposition of a penalty of death appropriate.  A mitigating circumstance is any factor which tends to make the defendant's conduct less serious, or the imposition of a penalty of death inappropriate.

In this case the State contends that the following four statutory aggravating circumstances exist:

1.  The murder was committed while the defendant was engaged in the commission of robbery.

2.  The defendant's course of conduct resulted in the deaths of two or more persons where the deaths are a probable consequence of the defendant's conduct.

3.  The murders were outrageously or wantonly vile, horrible or inhuman.

4.  The murders were committed for pecuniary gain.

You cannot recommend that this defendant be sentenced to death unless you find beyond a reasonable doubt that at least one statutory aggravating circumstance exists.

58

In this regard an applicable portion of the Delaware law provides that in any case where the defendant has been convicted of murder in the first degree in violation of 11 Delaware Code, Section 636(a)(2) that conviction shall establish the existence of a statutory aggravating circumstance.

In this case the defendant has been convicted of violating 11 Delaware Code, Section 636(a)(2) which reads: "Murder in the first degree. A person is guilty of murder in the first degree when in the course of and in furtherance of the commission of a felony, he recklessly causes the death of another person."

Therefore, that statutory aggravating circumstances has been established beyond a reasonable doubt, and you are so instructed.

The law provides that a sentence of death shall not be imposed unless you find beyond a reasonable doubt at least one statutory aggravating circumstance and unanimously recommend, after weighing all relevant

– ii –

evidence in aggravation, including but not limited to the statutory aggravating circumstance or circumstances that you have already found to exist, and mitigation which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender, that a sentence of death be imposed. You are to weigh any mitigating factors against the aggravating factors to determine the penalty.

If you have a reasonable doubt about the existence of any statutory aggravating circumstance, you must give the defendant the benefit of that reasonable doubt and find that the statutory aggravating circumstance does not exist.

I would remind you a reasonable doubt means a doubt based upon good and sufficient reasons and common sense.

Your unanimous recommendation for the imposition of the death penalty, if supported by the evidence, is binding on the Court. Similarly, if you are not unanimous in your recommendation to impose the death penalty, or you cannot agree unanimously as to your recommendations, then the Court is bound to impose a

sentence of life imprisonment without benefit of probation or parole.

In conclusion, a sentence of death shall not be imposed unless you, the jury, find beyond a reasonable doubt at least one statutory aggravating circumstance has been established and unanimously recommend a sentence of death be imposed after weighing all relevant evidence in aggravation and mitigation which bear upon the particular circumstances and details of the commission of the offense and the character and propensities of the offender.

Should you fail to agree unanimously to either of these two matters, the Court shall sentence the defendant to life imprisonment without benefit of probation or parole.

As I have previously instructed, you have found a statutory aggravating circumstance by returning verdicts of guilty of murder in the first degree in violation of 11 Delaware Code, Section 636(a)(2), recklessly causing the death during commission of a felony. You will be given a written interrogatory on which to indicate if you find any additional statutory

- iii -

61

aggravating circumstance.  If you do not unanimously find beyond a reasonable doubt the existence of any additional aggravating circumstance, you should indicate accordingly.

You will next indicate on the written interrogatory that will be given to you whether the jury unanimously recommends that a death sentence be imposed.

If you recommend the death penalty, you will then indicate on the written interrogatory which statutory aggravating circumstance or circumstances, including the violation of 11 Delaware Code, Section 636(a)(2), you relied upon in reaching your decision.

APPENDIX B

Flamer Jury Interrogatories (Flamer Rec. at 30)

1.  Does the jury unanimously find that the following statutory aggravating circumstance or circumstances exist?

(a)  The defendant's course of conduct resulted in the deaths of two or more persons where the deaths are a probable consequence of the defendant's conduct?

Yes ___x___No

(b)  The murder was outrageously or wantonly vile, horrible or inhuman?

Yes ___x___No

(c)  The murder was committed for pecuniary gain?

Yes ___x___          No

2.  Does the jury unanimously recommend that a sentence of death be imposed:

Yes ___x___No.

64

3. If the jury unanimously recommends that a sentence of death be imposed, please indicate which statutory aggravating circumstance or circumstances were relied upon:

(a) The murder was committed while the defendant was engaged in the commission of a robbery.

Yes __x__        No

(b) The defendant's course of conduct resulted in the deaths of two or more persons where the deaths are a probable consequence of the defendant's conduct.

Yes __x__        No

(c) The murder was outrageously or wantonly vile, horrible or inhuman.

Yes __x__        No

(d) The murder was committed for pecuniary gain.

Yes __x__        No _____

- v -

65

APPENDIX C

Bailey Jury Instructions (Bailey Tr. of 2/25/1980

at 270-75)

I shall now instruct you as to the applicable
principles of law governing the punishment to be
imposed in this case. No single one of these
instructions states all of the law applicable to this
determination; therefore you must listen to and
consider all of these instructions together. You are
to apply the law to the facts and in this way decide
the punishment to be imposed in the case.

The criminal code provides as follows:

"Upon a conviction of guilt of a defendant of
first degree murder, the Superior Court shall conduct a
separate hearing to determine whether the defendant
should be sentenced to death or to life imprisonment
without benefit of probation or parole or any other
reduction.

"A sentence of death shall not be imposed unless
the jury finds:

"1. Beyond a reasonable doubt at least one
statutory aggravating circumstances; and,

66

"2. Unanimously recommend, after weighing all relevant evidenced in aggravation or mitigation which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender, that a sentence of death be imposed. Where the jury submits such a finding and recommendation, the Court shall sentence the defendant to death. A finding by the jury of a statutory aggravating circumstance, and a consequent recommendation of death supported by the evidence, shall be binding on the Court."

The Delaware law specifies certain statutory aggravating circumstances which the State may contend exist in a particular case. The law does not specify mitigating circumstances, but the defense may offer evidence relating to mitigating circumstances which it contends exist in a particular case. The State may likewise offer matters in aggravation besides the statutory aggravating circumstances.

– vi –

An aggravating circumstance is a factor which tends to make the defendant's conduct more serious or

67

the imposition of a penalty of death appropriate. A mitigating circumstance is any factor which tends to make the defendant's conduct less serious or the imposition of a penalty of death inappropriate.

In this case, the State contends the following four statutory aggravating circumstances exist:

1. The murders were committed by one who had escaped from a place of confinement.

2. The murders were committed while the defendant was engaged in flight after committing robbery.

3. The defendant's course of conduct resulted in the deaths of two persons where the deaths were a probable consequence of the defendant's conduct.

4. The murders were outrageously or wantonly vile, horrible or inhuman.

You cannot recommend this defendant be sentenced to death unless you find beyond a reasonable doubt that at least one statutory aggravating circumstance exists.

You have already convicted the defendant of causing the death of two persons; therefore, that

aggravating circumstance has been established beyond a reasonable doubt and you are so instructed.

The law provides that a sentence of death shall not be imposed unless you find beyond a reasonable doubt at least one statutory aggravating circumstance and unanimously recommend, after weighing all relevant evidence in aggravation and mitigation which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender that a sentence of death be imposed. You are to weigh any mitigating factors against the aggravating factors to determine the penalty.

If you have a reasonable doubt about the existence of any statutory aggravating circumstance, you must give the defendant the benefit of that reasonable doubt and find that that statutory aggravating circumstance does not exist.

– vii –

I would remind you that reasonable doubt means a doubt based upon good and sufficient reason and common sense.

69

Your unanimous recommendation for the imposition of the death penalty, if supported by the evidence, is binding on the Court. Similarly, if you are not unanimous in your recommendation to impose the death penalty, or you cannot agree unanimously as to your recommendation, then the Court is bound to impose a sentence of life imprisonment without benefit of probation or parole.

In conclusion, a sentence of death shall not be imposed unless, the jury, find:

1. Beyond a reasonable doubt at least one statutory aggravating circumstance has been established; and

2. Unanimously recommend that a sentence of death be imposed after weighing all relevant evidence in aggravation and mitigation which bear upon the particular circumstances and details of the commission of the offense and the character and propensities of the offender.

Should you fail to agree unanimously to either of those two matters, the Court shall sentence the defendant to life imprisonment without benefit of probation or parole.

70

As I have previously instructed, you have found a statutory aggravating circumstance by returning verdicts of guilty of causing the death of two persons. You will be given a written interrogatory on which to indicate if you find any statutory aggravating circumstances.  If you do not unanimously find beyond a reasonable doubt the existence of any aggravating circumstance, you should indicate accordingly.

If you find one or more aggravating circumstance, you should next indicate on th_!